## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICE KANTZ, on behalf of herself individually and on behalf of those similarly situated,<br><br>          Plaintiff,<br><br>       v.<br><br>AT&T, INC. and AT&T SERVICES, INC.,<br>          Defendants. | CIVIL ACTION<br><br><br>NO.  20-531 |

### MEMORANDUM

**Joyner, J.**                                            **July  13, 2020**

Presently before the Court is Defendants' Motion for Court Order to Compel Individual Arbitration and Stay Proceedings.

### Factual Background

Plaintiff Patrice Kantz brings a putative collective action for alleged violations of the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621, et seq. stemming from purported age discrimination against older workers.  (Complaint, Doc. No. 1 at 6-7, ¶¶151.)  Plaintiff asserts that she satisfied all administrative remedies prior to bringing this suit, (id. ¶¶19-22), and she requests a jury trial, (id. at 4).  The crux of her Complaint is that, as a part of an effort to lay off older employees, Defendants AT&T Services, Inc. and AT&T, Inc. presented older employees with a 2019 General Release and Waiver

Agreement ("General Release") that conditioned severance
payments upon waiving certain age discrimination claims.  (Id.
at 5; Plaintiff's Brief in Opposition to Defendants' Motion for
Court Order to Compel Individual Arbitration and Stay
Proceedings, Doc. No. 13 at 48.)  Specifically, Plaintiff argues
that the General Release failed to provide certain workforce
reduction information that would permit a terminated worker to
decide whether to sign the General Release.  (See also Doc. No.
1 ¶¶125-26, 170-71.)  Thus, Plaintiff avers that the General
Release "is not a valid and enforceable waiver of her rights and
claims under the ADEA."  (Letter, Doc. No. 15 at 1.  See also
Doc. No. 1 ¶¶125-26, 170-71.)  In support of her contention,
Plaintiff argues that the General Release is materially similar
to an agreement that Magistrate Judge Rice found invalid for
failing to adequately describe the decisional unit, or the class
of employees considered for a layoff.  (Doc. No. 1 ¶¶35(f)-(g),
124; Doc. No. 13 at 21.)  See Ray v. AT&T Inc., 2019 WL 175136,
at *1 (E.D. Pa. Jan. 11, 2019) (Rice, Magis. J.).

    Defendants bring the instant Motion to Compel Individual
Arbitration and Stay Proceedings on grounds that a prior 2012
Management Arbitration Agreement ("MAA") relegates Plaintiff's
age discrimination employment claims to individual arbitration
under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq.
(Defendants' Motion for Court Order to Compel Individual

2

Arbitration and Stay Proceedings, Doc. No. 7 at 18.)  In her
Response, Plaintiff contends that the General Release superseded
the MAA and, because the General Release purportedly does not
require arbitration, that Plaintiff need not submit her claims
to an arbitrator.  (Doc. No. 13 at 48-49.)  In their Reply,
Defendants argue that the General Release did not supersede the
MAA because, they aver, the two contracts are not sufficiently
similar.  (Defendants' Reply Memorandum of Law in Further
Support of Defendants' Motion for Court Order to Compel
Individual Arbitration and Stay Proceedings, Doc. No. 14 at 21-
22.)  Additionally, Defendants argue that if the General Release
is invalid, as Plaintiff contends in her Complaint, then the
General Release cannot supersede the MAA as a matter of law.
(Id. at 22.)  In response, Plaintiff argues she has not alleged
that the General Release is invalid but that, "rather, she has
alleged that it is not a valid and enforceable waiver of her
rights and claims under the ADEA."  (Doc. No. 15 at 1 (emphasis
in original).)

## **Analysis**

### Subject-Matter Jurisdiction

Subject-matter jurisdiction is proper under 28 U.S.C. §
1331.  (Doc. No. 1 ¶17; Doc. No. 7 at 17.)

## Standard of Review

The standard of review applicable to motions to compel arbitration varies.  The Rule 12(b)(6) standard applies when it is "apparent" from the face of the complaint and documents upon which the complaint relies "that certain of a party's claims are subject to an enforceable arbitration clause . . . ."  Guidotti v. Legal Helpers Debt Resolution, LLC, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotations omitted).  See also Morina v. Neiman Marcus Grp., Inc., 2014 WL 4933022, at *6 (E.D. Pa. Oct. 1, 2014).

On the other hand, if "'the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue,'" then the Court should permit limited discovery on the factual issue of whether there is a valid arbitration agreement.  Morina, 2014 WL 4933022, at *6 (quoting Guidotti, 716 F.3d at 776).  Once this limited discovery is complete, the movant may submit a renewed motion to compel arbitration, which the Court will evaluate under the summary judgment standard.  Guidotti, 716 F.3d at 776; Morina, 2014 WL 4933022, at *6.  If the Court then finds that summary judgment is inappropriate because the party opposing the motion to compel arbitration can show "a genuine dispute as to the enforceability

4

of the arbitration clause," then the Court may proceed to a
trial about "the making of the arbitration agreement . . . ."
Guidotti, 716 F.3d at 776 (internal quotations omitted).  See
also Morina, 2014 WL 4933022, at *6.  Thus, as a threshold
matter, we must determine whether an agreement to arbitrate is
apparent from the Complaint and supporting documents.  See
Guidotti, 716 F.3d at 776; Morina, 2014 WL 4933022, at *6.

### Whether the General Release Superseded the MAA

Plaintiff asserts that there is no controlling agreement to
arbitrate because the General Release superseded the MAA.  (Doc.
No. 13 at 48-49.)  In this jurisdiction, "the question of
whether a later agreement supersedes a prior arbitration
agreement is tantamount to whether there is an agreement to
arbitrate."  Jaludi v. Citigroup, 933 F.3d 246, 255 (3d Cir.
2019).  Accordingly, when addressing the question of novation,
the Court must apply state law, rather than federal law, and
should not invoke the presumption of arbitrability.  Id. at 254-
55.  Here, both parties appear to assert that Pennsylvania law
governs, so we apply Pennsylvania contract law to the question
of whether the General Release superseded the MAA.  (Doc. No. 13
at 48-49; Doc. No. 14 at 21-22.)  See Jaludi, 933 F.3d at 254-
55.  See also Morina, 2014 WL 4933022, at *15 n.14.

According to Pennsylvania contract law, a subsequent
contract between the same parties regarding the same subject

matter supersedes the earlier agreement, even if the initial agreement includes an arbitration clause and the subsequent one does not.  _Jaludi_, 933 F.3d at 256.  However, a subsequent invalid agreement cannot supersede a prior agreement.  _Morina_, 2014 WL 4933022, at *14-15.  We note that, when adjudicating a motion to compel arbitration under the FAA, the Court "may not consider the merits of the underlying claims" and, instead, must only determine whether the merits should be submitted to arbitration.  _Morina_, 2014 WL 4933022, at *5.  Setting aside that the validity of the General Release as to ADEA claims is part of the ultimate question that Defendants argue should be submitted to an arbitrator, we observe that the validity of the General Release is a predicate issue to whether the General Release has superseded the MAA and, therefore, whether there is a controlling arbitration agreement.

In support of her argument that the General Release superseded the MAA, Plaintiff cites the following provision from the General Release:

> The provisions of this General Release and Waiver set forth the entire agreement between me and the Companies concerning termination of my employment.  Any other promises or representations, written or oral, are replaced by the provisions of this document and are no longer effective unless they are contained in this document.

(Doc. No. 13 at 49.  _See also_ General Release and Waiver, Doc. No. 7, Ex. D, at 92.)

6

However, Plaintiff also argues that the General Release is invalid as to her ADEA claims because it is materially similar to an agreement that Magistrate Judge Rice found invalid for failing to disclose the decisional unit. (Doc. No. 1 ¶¶35(f)-(g), 124; Doc. No. 13 at 21.) See <u>Ray</u>, 2019 WL 175136, at *1.

We note that the record does not appear to contain the full text of the General Release, (<u>see</u> Doc. Nos. 1, 7, 12, 14, 15), rendering impossible the task of determining the validity of the General Release as to ADEA claims or comparing the two agreements to determine whether novation occurred. Absent is the portion describing the decisional unit and, specifically, the "ADEA Listing" attachment referenced in section E of the General Release. (Doc. No. 7, Ex. D, at 93.) Thus, we must order the parties to undergo limited discovery regarding whether there is an agreement to arbitrate. See <u>Guidotti</u>, 716 F.3d at 774, 776; <u>Morina</u>, 2014 WL 4933022, at *6. Once this limited discovery is complete, Defendants may submit a renewed motion to compel arbitration, which we will evaluate under the summary judgment standard. <u>Guidotti</u>, 716 F.3d at 776; <u>Morina</u>, 2014 WL 4933022, at *6.

We further note that parties may agree to submit to arbitration the question of whether there is an arbitration agreement. <u>Richardson v. Coverall N. Am., Inc.</u>, 2020 WL 2028523, at *2 (3d Cir. Apr. 28, 2020). However, there must be

"clea[r] and unmistakabl[e] evidence of the parties' intent" of
such an agreement.  Id. (internal quotations omitted)
(alterations in original).  Here, as neither of the parties
appear to contend that the question of novation should be
submitted to arbitration, we need not address this question.

## Conclusion

We stay Defendants' Motion for a period of ninety days to
allow for limited discovery on the question of whether there is
a valid arbitration agreement.  An appropriate Order follows.