**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PATRICE KANTZ, on behalf of herself individually and on behalf of those similarly situated, | CIVIL ACTION |
| Plaintiff, | |
| v. | NO.  20-531 |
| AT&T, INC. and AT&T SERVICES, INC., | |
| Defendants. | |

**MEMORANDUM**

**Joyner, J.**                                                      **March 19, 2021**

Presently before the Court is Defendants' Motion for Court Order to Compel Individual Arbitration and Stay Proceedings.

## I. Background

Plaintiff Patrice Kantz brings this putative collective action claiming violations of the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621, et seq. (Compl., Doc. No. 1 at 6-7, ¶151.)  Kantz asserts that she has satisfied all administrative remedies, (id. ¶¶19-22), and requests a jury trial, (id. at 4).  The Complaint alleges that Defendants AT&T Services, Inc. and AT&T, Inc. ("AT&T"): (1) intentionally terminated Kantz because of her age in violation of the ADEA; (2) in the alternative, terminated Kantz because of her age through the use of AT&T's facially neutral employment

1

policies and practices that disparately impacted older workers
in violation of the ADEA; and (3) obtained a non-compliant Older
Workers Benefit Protection Act ("OWBPA") release from Kantz at
the time of her termination.  (Compl., Doc. No. 1 at 6-7.)

Defendants bring this Motion to Compel Individual
Arbitration and Stay Proceedings on the grounds that a 2012
Management Arbitration Agreement ("MAA") relegates Plaintiff's
age discrimination employment claims to individual arbitration
under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq.
(Defs.' Mot. for Ct. Order to Compel Individual Arbitration and
Stay Proceedings, Doc. No. 7 at 18.)  The MAA stated that "any
claim" against AT&T and related entities including "those
arising out of or related to [Kantz's] employment or termination
of employment" be decided by "final and binding arbitration
instead of court litigation," but that a "court of competent
jurisdiction" must decide all disputes as to the
"enforceability, revocability or validity of the Agreement or
any portion of the Agreement."  (Defs.' Mot. for Ct. Order to
Compel Individual Arbitration and Stay Proceedings, Doc. No. 7,
Ex. A at 78-79.)  The agreement also included a collective
action waiver.  (Id. at 79.)

Plaintiff opposes the Motion on many grounds.  In
particular, she argues that a 2019 General Release and Waiver
agreement ("General Release") between her and AT&T, signed at

the time of her termination, superseded the MAA because the two agreements are on the same subject matter and by the agreement's terms.  The General Release did not contain a promise to arbitrate disputes and so, she argues, this Court cannot compel arbitration.  (Pl.'s Br. in Opp'n to Defs.' Mot. for Ct. Order to Compel Individual Arbitration and Stay Proceedings, Doc. No. 13 at 48-49.)  The General Release stated, in pertinent part:

> By signing this General Release and Waiver, I intend to release any claims I may have under [local, state, and federal laws] or any other laws with respect to my employment and to the termination of my employment . . . I expressly understand and agree that this is a General Release that, to the fullest extent permitted by law, waives, surrenders, and extinguishes all claims that I have or may have against the Released Parties . . . The provisions of this General Release and Waiver set forth the entire agreement between me and the Companies concerning termination of my employment. Any other promises or representations, written or oral, are replaced by the provisions of this document and are no longer effective unless they are contained in this document. If a court determines that any part of this General Release and Waiver is not valid, the other parts will still remain valid and enforceable.

(Pl.'s Br. in Further Opp'n to Defs.' Mot. for Ct. Order to Compel Individual Arbitration and Stay Proceedings, Doc. No. 34, Ex. B at 52-53.)

Defendants argue that the General Release did not supersede the MAA because the agreements are not on the same subject matter and because, if the General Release is invalid, then the General Release cannot supersede the MAA as a matter of law.

3

(Defs.' Reply Mem. of Law in Further Supp. of Defs.' Mot. for
Ct. Order to Compel Individual Arbitration and Stay Proceedings,
Doc. No. 14 at 21-22.)  Plaintiff contends that she has not
alleged that the General Release is invalid in its entirety, but
"rather, she has alleged that it is not a valid and enforceable
waiver of her rights and claims under the ADEA." (Statement
Letter to Judge Joyner, Doc. No. 15 at 1 (emphasis in
original).)

On July 13, 2020, in consideration of the Defendants'
Motion for Court Order to Compel Individual Arbitration and Stay
Proceedings, (Defs.' Mot. for Ct. Order to Compel Individual
Arbitration and Stay Proceedings, Doc. No. 7), this Court
ordered a stay of ninety days for limited discovery as to the
factual issue of whether there is a valid arbitration agreement.
(Doc. No. 17.)  During those ninety days, Defendants moved for a
lift of the stay of proceedings and further argued that the
General Release did not supersede the MAA.  (Defs.' Mot. for Ct.
Order to Lift the Stay of Proceedings, Doc. No. 18.)  Defendants
also argued, for the first time, that an arbitrator, not this
Court, should decide the question of whether the General Release
superseded the MAA.  (Id. at 10.)  Plaintiff opposed the Motion
to Lift the Stay, (Pl.'s Br. in Opp'n to Defs.' Mot. for Ct.
Order to Lift the Stay of Proceedings, Doc. No. 22), and AT&T
filed a reply brief in further support of its motion, (Reply

4

Mem. of Law in Further Supp. Of Defs.' Mot. for Ct. Order to
Lift the Stay of Proceedings, Doc. No. 23.)   The Court did not
rule on the Motion to Lift the Stay of Proceedings and the stay
was extended until October 20, 2020 to allow for the completion
of the limited discovery.   (Doc. No. 32.)   After the close of
discovery, Defendants submitted further briefing in support of
their Motion to Compel Individual Arbitration and Stay
Proceedings, (Mem. of Law in Further Supp. Of Defs.' Mot. to
Compel Individual Arbitration and Stay Proceedings, Doc. No. 33;
Reply Mem. of Law in Further Supp. of Defs.' Mot. to Compel
Individual Arbitration and Stay Proceedings, Doc. No. 36.)
Plaintiff filed further briefing in opposition to the Motion.
(Pl.'s Br. in Further Opp'n to Defs.' Mot. to Compel Individual
Arbitration and Stay Proceedings, Doc. No. 34.)

Defendants in further support of the Motion argue: (1)
Plaintiff agreed to the terms of the MAA; (2) the question of
whether the General Release superseded the MAA should be decided
by an arbitrator according to the severability principle of
federal common law; and (3) the General Release did not
supersede the MAA.   (Mem. of Law in Further Supp. Of Defs.' Mot.
to Compel Individual Arbitration and Stay Proceedings, Doc. No.
33, at 6; Reply Mem. of Law in Further Supp. of Defs.' Mot. to
Compel Individual Arbitration and Stay Proceedings, Doc. No. 36
at 6.)   Plaintiff opposes AT&T on all points and maintains that

the Court cannot compel arbitration.  (See Pl. Br. in Further Opposition to Def. Mot. to Compel Individual Arbitration and Stay Proceedings, Doc. No. 34.)

## II. Analysis

### a. Subject-Matter Jurisdiction

Subject-matter jurisdiction is proper under 28 U.S.C. § 1331.  (Compl., Doc. No. 1 at ¶17; Defs.' Mot. for Ct. Order to Compel Individual Arbitration and Stay Proceedings, Doc. No. 7 at 17.)

### b. Standard of Review

We review this Motion under the summary judgment standard. In general, if a valid agreement to arbitrate exists and a dispute falls within the scope of the agreement's terms, the Court must mandate arbitration.  9 U.S.C. § 2.  When the "arbitrability of claims is apparent on the face of a complaint or documents relied upon in the complaint," then courts should apply the Rule 12(b)(6) standard.  Guidotti v. Legal Helpers Debt Resol., L.L.C., 716 F.3d 764, 773–74 (3d Cir. 2013) (internal quotations omitted).  If "the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," then the parties should engage in limited discovery regarding the question of arbitrability.

Id. at 776.  Once this limited discovery is complete, courts may consider a renewed motion to compel arbitration, under a summary judgment standard.  Id.  Here, this Court has already ordered limited discovery on the factual issue of whether there is a valid arbitration agreement.  We now review the Motion as a renewed motion to compel arbitration under the summary judgment standard.  Id.; Morina v. Neiman Marcus Grp., Inc., 14-CV-1394, 2014 WL 4933022, at *6 (E.D. Pa. Oct. 1, 2014).

We can only compel arbitration or deny the motion where there is no genuine issue of material fact as to whether the parties entered a valid agreement to arbitrate.  Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 159 (3d Cir. 2009).  If there is "a genuine dispute as to the enforceability of the arbitration clause," then we may proceed to a trial on "the making of the arbitration agreement."  Guidotti, 716 F.3d at 776 (internal quotations omitted).

   c. Pennsylvania Law Applies to the Question of Whether the
          General Release Superseded the MAA

We apply Pennsylvania contract law to the question of whether the General Release superseded the MAA.  Courts must consider two questions when deciding whether to compel arbitration: first, if there is an agreement to arbitrate and, second, if the dispute at issues falls within the scope of that agreement.  Jaludi v. Citigroup, 933 F.3d 246, 254 (3d Cir.

2019).  Courts apply state law at step one and "do not invoke the presumption of arbitrability." Id.  At step two, "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement ... due regard must be given to the federal policy favoring arbitration." Id. at 254–55 (citations omitted).  In the Third Circuit, "the question of whether a later agreement supersedes a prior agreement is tantamount to whether there is an agreement to arbitrate.  It is therefore a question to which state law, not federal law, applies." Id. at 255.  The question of whether the General Release superseded the MAA is part of the inquiry into whether there was an agreement to arbitrate and must be decided under state law, without regard to the federal policy favoring arbitration.  The parties agree that the governing law is Pennsylvania contract law.  (Pl.'s Br. in Opp'n to Defs.' Mot. for Ct. Order to Compel Individual Arbitration and Stay Proceedings, Doc. No. 13 at 48-49; Reply Mem. of Law in Further Supp. of Defs.' Mot. for Court Order to Compel Individual Arbitration and Stay Proceedings, Doc. No. 14 at 21-22.)  We note that Pennsylvania Courts have also found a public policy favoring arbitration. See McCarl's, Inc. v. Beaver Falls Mun. Auth., 847 A.2d 180, 184 (Pa. Commw. Ct. 2004).

### d. The General Release Superseded the MAA

We cannot compel arbitration because the General Release, which did not include an agreement to arbitrate, superseded the MAA.

### *i. The MAA and the General Release Are on the Same Subject Matter*

A later agreement supersedes an earlier agreement on the same subject matter. <u>Jaludi</u>, 933 F.3d at 256 ("Under Pennsylvania law, the later of two agreements between the same parties as to the same subject matter generally supersedes the prior agreement."). "This is true even if the first agreement includes an arbitration clause and the second agreement does not." <u>Id.</u> at 256. The parties disagree on whether the General Release and the MAA are on the same subject matter.

The general Release and the MAA are "agreements between the same parties as to the same subject matter" by their own plain meaning. <u>Id.</u> Both agreements state that they concern claims arising out of Kantz's employment and termination of employment. The MAA was an agreement to arbitrate claims between Kantz and AT&T including "those arising out of or related to [her] *employment* or *termination of employment*." (Defs.' Mot. for Ct. Order to Compel Individual Arbitration and Stay Proceedings, Doc. No. 7 at 45 (emphasis added).) The General Release was a promise to release, waive, and extinguish all claims "with respect to *employment* and to the *termination of employment*" and

9

set "forth the entire agreement between [Kantz] and [AT&T] concerning *termination of [her] employment*."  (Pl.'s Br. in Further Opp'n to Defs' Mot. to Compel Individual Arbitration and Stay Proceedings, Doc. No. 34, Ex. B at 52-53.)

The agreements are on the same subject matter: the resolution of disputes related to Plaintiff's employment and termination of employment.  The MAA was a promise to arbitrate claims arising out of or relating to employment or the termination of employment.  The General Release was an agreement that AT&T would pay severance to Kantz in exchange for her releasing, waiving, and extinguishing any claims against AT&T that she may have tried to arbitrate.  The agreement to extinguish the right to arbitrate claims displaced any promise to arbitrate them.

AT&T argues that the MAA concerned procedural rights and the General Release concerned substantive rights.  (Defs' Mot. for Ct. Order to Lift the Stay of Proceedings, Doc. No. 18 at 16-17; Reply Mem. of Law in Further Supp. of Defs' Mot. to Compel Individual Arbitration and Stay Proceedings, Doc. No. 36 at 7.)  The General Release and the MAA, however, *both* addressed the *resolution of disputes*.  The General Release purportedly contained the release, waiver, and extinction of claims related to Kantz's employment and termination of employment.  The release, waiver, and extinction of claims are methods of

10

resolving disputes.  Arbitration and litigation are also methods
of resolving disputes and, therefore, the agreements concern the
same subject matter.

Defendants unconvincingly argue that, even if the General
Release and the MAA concern the same subject, the agreement to
arbitrate was not displaced because the agreements can co-exist.
(Mem. of Law in Further Supp. of Def. Mot. to Compel Individual
Arbitration and Stay Proceedings, Doc. No. 33 at 9.)  AT&T
claims that the two agreements can be "handily harmonized" and
that both agreements were entered into with proper
consideration.  (Defs.' Mot. for Ct. Order to Lift the Stay of
Proceedings, Doc. No. 18 at 20; Mem. of Law in Further Supp. of
Def. Mot. to Compel Individual Arbitration and Stay Proceedings,
Doc. No 33 at 13.)  The agreements, however, cannot be "handily
harmonized."  The General Release's purported extinction of
claims arising from or related to termination of employment is
in conflict, not harmony, with the promise to arbitrate those
claims included in the MAA.  Cf. Patten Sec. Corp. v. Diamond
Greyhound & Genetics, Inc., 819 F.2d 400, 407 (3d Cir. 1987)
(finding under federal law and a presumption in favor of
arbitration that an arbitration obligation and a forum selection
clause in separate agreements are both in effect because
"arbitration awards are not self enforceable").

## *ii. The Parties Intended the General Release to Supersede the MAA*

The parties' intent that the General Release supersede prior agreements, including the MAA, is clear from the language of the General Release.  In Pennsylvania, "[t]he fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the parties.  Specifically, the intent of the parties to a contract is to be regarded as embodied in the writing itself." <u>Binswanger of Pennsylvania, Inc. v. TSG Real Est. LLC</u>, 217 A.3d 256, 262 (Pa. 2019) (citations omitted).  We must "not assume that contractual language is chosen carelessly, nor . . . assume that the parties were ignorant of the meaning of the language they employed." <u>Id.</u> at 161.

The General Release explicitly stated that it is the "entire agreement between [Kantz] and [AT&T] concerning termination of [her] employment.  Any other promises or representations, written or oral, are replaced by the provisions of this document and are no longer effective unless they are contained in this document."  (Pl.'s Br. in Further Opp'n to Defs' Mot. to Compel Individual Arbitration and Stay Proceedings, Doc. No. 34, Ex. B at 54.)  The parties agree that this Court can assess the meaning of that provision as a matter of law.  (<u>Id.</u> at 26; <u>Id.</u>, Ex. I at 172.)  The plain language of

the provision meant that any previous promise made about claims arising out of or relating to the termination of employment was no longer effective, if not included in the General Release. The MAA was a promise to arbitrate claims arising out of or relating to the termination of Kantz's employment.  Therefore, any promise to arbitrate claims arising out of or related to the termination of employment was no longer effective unless it was contained in the General Release.  There was no promise to arbitrate in the General Release and so there is no effective promise to arbitrate Kantz's claims here.

Further, the General Release included a collective action waiver, but there was also a collective action waiver in the MAA.  Such a waiver was only necessary if the parties intended for the General Release to supersede the MAA.

Although the parties' intent is evident in the language of the General Release, AT&T cites to several cases in which courts have enforced arbitration agreements when a later agreement is silent on arbitration.  The facts of those cases, however, are distinct from those here.  See, e.g., Ryan v. BuckleySandler, LLP, 69 F. Supp. 3d 140 (D.D.C. 2014) (arbitration agreement stated that it "may not be modified or rescinded except by the mutual written consent of both" parties and the later agreement did not do so, but the MAA has no such provision); Youssefzadeh v. Glob.-IP Cayman, No. 218CV02522, 2018 WL 6118436, at *5 (C.D.

Cal. July 30, 2018) (later contract did not state that prior
promises are no longer effective as the General Release did);
McCarl's, Inc., 847 A.2d at 184 (earlier contract explicitly
stated that all subsequent modifications are to be considered
part of the original contract, unlike the MAA); Pelletier v.
Yellow Transp., Inc., 549 F.3d 578, 581 (1st Cir. 2008)
(subsequent agreement was an employment application stating the
terms of an at will employment relationship and not the waiver
of claims, as here, which, like arbitration, is a "mechanism for
resolving disputes"); Pearson v. Valeant Pharm. Int'l, Inc., No.
CV 17-1995, 2017 WL 6508358, at *4 (D.N.J. Dec. 20, 2017)
(agreements were not on the same subject matter under New Jersey
contract law, unlike the agreements here); Contra Dasher v. RBC
Bank (USA), 745 F.3d 1111, 1119 (11th Cir. 2014) ("[Defendant]
claims that silence in a subsequent agreement is per se
insufficient to eliminate an earlier agreement's arbitration
provision. . . [but] when 'all prior agreements' are superseded,
as they were here, a prior arbitration agreement is superseded
because it obviously fits within the category of 'all prior
agreements'"); Collier v. Nat'l Penn Bank, 2015 PA Super 246,
128 A.3d 307, 311 (2015) (later agreement silent on arbitration
superseded an earlier agreement with an arbitration provision).
As we have stated, a subsequent contract between the same
parties regarding the same subject matter supersedes an earlier

agreement, even if the initial agreement includes an arbitration clause and the subsequent one does not.  Jaludi, 933 F.3d at 256.

Of course, as AT&T stresses, "an integration clause is not a talisman that operates magically to moot a separate agreement involving distinct subject matter, even if the signatories overlap."  Lanard & Axilbund, LLC v. Wolf, No. 14-CV-0234, 2014 WL 4722702, at *3 (E.D. Pa. Sept. 23, 2014).  Here, as we have discussed, the agreements involved the same subject matter and the parties' intent that the General Release supersede earlier agreements was expressed in the General Release.  The cases on which AT&T relies to describe the effect of an integration clause are distinguishable.  See, e.g., Lanard & Axilbund, LLC, 2014 WL 4722702, at *3 (party had continued performing under and accepting benefits under prior agreement); Sklaroff v. Zaken, No. 3841 EDA 2016, 2017 WL 3574018, at *5 (Pa. Super. Ct. Aug. 18, 2017) (employment agreement and operating agreement involved different subject matters and different parties); Skold v. Galderma Lab'ys L.P., 917 F.3d 186 (3d Cir. 2019) (contracts involved different subject matters).

The General Release did not include language that the MAA remain effective, and did not contain a new promise to arbitrate.  We cannot assume that AT&T chose any language carelessly or that the meaning of the words in the contract are

15

not what they appear to be.  We find that the parties intended
the General Release to supersede the MAA because that is what
the words of the agreement indicate.

AT&T further reasons that the MAA remains in effect because
the agreement stated that it survives the employment
relationship, but that provision is irrelevant.  The issue here
is not whether the MAA survived the employment relationship, but
rather whether the MAA survived the parties' agreement to the
General Release, which it did not.

### iii. The General Release Can Supersede the MAA Because It Is Not Entirely Invalid

AT&T argues that the General Release cannot supersede the
MAA, if the General Release is itself invalid, (Reply Mem. of
Law in Further Supp. of Defs.' Mot. for Court Order to Compel
Individual Arbitration and Stay Proceedings, Doc. No. 14 at 22),
because a subsequent invalid agreement cannot supersede a prior
agreement.  Morina, 2014 WL 4933022, at *14-15.  Neither party,
however, has alleged that the General Release is entirely
invalid.  Kantz contends only that the General Release is not a
valid and enforceable waiver of her rights and claims under the
ADEA.  (Compl., Doc. No. 1 at ¶¶ 170, 125, 126, 171; Pl.'s Br.
in Further Opp'n to Defs' Mot. to Compel Individual Arbitration
and Stay Proceedings, Doc. No. 34 at 16-19.)  Further, the
General Release stated that "[i]f a court determines that any

16

part of this General Release and Waiver is not valid, the other parts will still remain valid and enforceable." (Defs.' Mot. for Ct. Order to Compel Individual Arbitration and Stay Proceedings, Doc. No. 7 at 92.) "[A] court is bound by the clear language of a contract as to severability." Kraisinger v. Kraisinger, 2007 PA Super 197, 928 A.2d 333, 341 (2007) (internal quotations omitted). Even if ultimately found invalid in part, the parties made clear when they formed the agreement that any valid provisions will remain in effect. The validity of the promise that the General Release replace previous promises concerning the termination of Kantz's employment is not in question and is, therefore, valid.

The validity of the General Release as to ADEA claims is part of the ultimate question that Defendants argue should be submitted to an arbitrator, but we do not consider that question here. The Court "may not consider the merits of the underlying claims" when adjudicating a motion to compel arbitration, but must only determine whether the merits should be submitted to arbitration. Morina, 2014 WL 4933022, at *5. Whether or not the General Release complied with the OWBPA does not affect our ruling that the General Release superseded the MAA and we make no findings on the merits of the underlying claims.

Because we find that the General Release superseded the MAA, we do not address the validity or enforceability of the MAA were it not superseded.

### e. This Court Can Decide the Question of Whether the General Release Superseded the MAA

AT&T asserts that, under Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967) and the severability principle of federal common law, an arbitrator, not this Court, must decide whether the General Release superseded the MAA. (Mem. of Law in Further Supp. Of Defs.' Mot. to Compel Individual Arbitration and Stay Proceedings, Doc. No. 33, at 9; Defs.' Mot. for Ct. Order to Lift the Stay of Proceedings, Doc. No. 18 at 10.)  Under the severability principle, an arbitrator should decide a dispute when the party opposing arbitration challenges the entire contract and a Court should decide whether to compel arbitration "where a party specifically challenges the validity of the arbitration agreement itself."  Lincoln Gen. Ins. Co. v. Clarendon Nat'l Ins. Co., No. 08-CV-0583, 2008 WL 11367526, at *4 (M.D. Pa. Aug. 15, 2008).  "[O]nly challenges to the validity of the agreement to arbitrate are examined by a court in deciding the gateway questions to enforceability; 'a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.'"  Duffy v. Am. Gen. Life

18

Ins. Co., No. 19-CV-1490, 2020 WL 7021472, at *4 (W.D. Pa. Nov. 30, 2020) (citing Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 70–71 (2010)).

Kantz contends that AT&T has waived this severability argument because AT&T did not raise it in their initial briefing on the Motion. (Pl.'s Br. in Opp'n to Defs.' Mot. for Ct. Order to Lift the Stay of Proceedings, Doc. No. 22 at 18.)  Only in AT&T's Motion for Court Order to Lift the Stay of Proceedings, (Doc. No. 18 at 10), did AT&T attempt to argue, for the first time, that this Court cannot decide the question of whether the General Release superseded the MAA.  Generally, courts should decline to consider arguments raised for the first time in a reply brief when consideration of the issue would prejudice the other party.  In re BlackRock Mut. Funds Advisory Fee Litig., 327 F. Supp. 3d 690, 736 (D.N.J. 2018), aff'd, 816 F. App'x 637 (3d Cir. 2020); Ballas v. Tedesco, 41 F. Supp. 2d 531, 533 (D.N.J. 1999) ("A moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief.")  Here, AT&T could have raised this issue in their initial Motion to Compel Arbitration, but neglected to do so.  Defendants, however, did raise it in their Motion for Court Order to Lift the Stay of Proceedings, (Doc. No. 18), to which Plaintiff had the opportunity to respond, (Pl.'s Br. in Opp'n to Defs.' Mot. for Ct. Order to

Lift the Stay of Proceedings, Doc. No. 22), and later to submit
a further response in opposition to the Motion to Compel
Arbitration, (Pl.'s Br. in Further Opp'n to Defs.' Mot. to
Compel Individual Arbitration and Stay Proceedings, Doc. No.
34).  We do not see, therefore, that Plaintiff is prejudiced by
the Court's consideration of this issue.  We further find that
AT&T is not judicially estopped from pursuing this argument.

AT&T's severability argument is inapplicable here because
Kantz does challenge the validity of the agreement to arbitrate.
Additionally, if the parties agreed to the MAA, as AT&T
contends, they promised that disputes "as to the enforceability,
revocability or validity of the [MAA] Agreement or any portion
of the [MAA] Agreement . . . shall be determined only by a court
of competent jurisdiction" not an arbitrator.  (Defs.' Mot. for
Ct. Order to Compel Individual Arbitration and Stay Proceedings,
Doc. No. 7, Ex. A at 78-79.)  As discussed, in the Third
Circuit, "the question of whether a later agreement supersedes a
prior arbitration agreement is tantamount to whether there is an
agreement to arbitrate." Jaludi, 933 F.3d at 255.  The MAA
delegates the authority to decide arbitrability to a court of
competent jurisdiction (i.e. this Court) and the question of
whether the General Release superseded the MAA is a question of
whether there is an agreement to arbitrate.

### III. Conclusion

We deny Defendants' Motion to Compel Arbitration and Stay Proceedings for the previously stated reasons.  An Order follows.