IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICE KANTZ,<br><br>              *Plaintiff,*<br><br>v.<br><br>AT&T, INC. et al.,<br><br>              *Defendants.* | CIVIL ACTION<br>NO. 20-531 |

**PAPPERT, J.**                                                                                                  February 13, 2023

## MEMORANDUM

Patrice Kantz was fired in 2019, when she was 57 years old, from her position as a Senior Technical Project/Program Manager in AT&T's Technology and Operations business unit. She asserts claims under the Age Discrimination in Employment Act on behalf of herself individually and similarly situated employees over the age of forty who were terminated from the Technology and Operations unit. AT&T moves to dismiss the collective action allegations, relying on a collective action waiver contained in a General Release Kantz signed in exchange for severance benefits. The Court denies the motion.

I

Kantz alleges that AT&T conducted a series of group layoffs ("surpluses," in AT&T's terminology) which discriminated against older employees. (*Id.* ¶¶ 60–71.) Employees selected for surplus were notified before the effective date of the termination and given a period of time to apply for other positions within the company. (*Id.* ¶ 33.) Those who did not secure an alternate position were offered severance benefits in exchange for signing a "General Release and Waiver" of all claims through termination—including, as relevant here, ADEA claims and collective action rights.

1

AT&T conducted a reduction in force within its Technology and Operations business unit in the first quarter of 2019. Kantz learned on January 28, 2019 that she had been selected for surplus. The Surplus Notification documentation she received included a copy of the General Release and Waiver and disclosures required under the ADEA, as amended by the Older Workers' Benefit Protection Act ("OWBPA disclosures"). (*Id.* ¶ 54.) Kantz signed the General Release, which included a release of her substantive ADEA claims and a collective action waiver.

Kantz now alleges that the disclosures AT&T provided were deficient under the OWBPA.[1] If so, this would render Kantz's release of her substantive ADEA claims unenforceable. 29 U.S.C. § 626(f)(1). Additionally, Kantz alleges that AT&T knew when it provided the January 28, 2019, Surplus Notification documentation that the disclosures were deficient and the claim waiver was unenforceable. A sophisticated employer like AT&T, she asserts, would know that the disclosures did not comply with the OWBPA. Kantz also leans heavily on an opinion by then Magistrate Judge Rice in *Ray v. AT&T Inc.*, No. 18-3303, 2019 WL 175136 (E.D. Pa. Jan. 11, 2019), finding that a materially identical OWBPA disclosure AT&T provided in prior layoffs was deficient. (Am. Compl. ¶ 86.) AT&T nevertheless used the same disclosures weeks after Judge Rice's decision to conceal its ADEA violations and obtain the benefit of a purportedly enforceable release. (*Id.* ¶ 100.) Believing based on AT&T's misrepresentations that they had already released their substantive ADEA claims, terminated employees also agreed to waive their procedural ADEA collective action rights when they signed the

---

[1]    The sufficiency of the disclosure is a legal conclusion, but AT&T does not at this time challenge Kantz's substantive ADEA claims. The question presently before the Court is whether, assuming the ADEA claim waiver is unenforceable because the OWBPA disclosures were deficient, Kantz's waiver of her procedural ADEA collective action rights is enforceable.

2

General Release and Waiver.  (*Id.* ¶ 114.)  Kantz alleges that because it was procured by "fraud, deceit, unconscionability and/or bad faith," the collective action waiver is unenforceable.  (*Id.* ¶ 124.)[2]

## II

A Rule 12(b)(6) motion tests the sufficiency of the factual allegations in the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  When confronted with a 12(b)(6) motion, a district court must conduct a two-step analysis.  *Fowler v. UPMC Shadyside*, 578 F. 203, 210 (3d Cir. 2009).  First, the Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  *Id.* at 210–11.  Then, it "must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  The Court must "construe the complaint in the light most favorable to the plaintiff . . . ."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008).

## III

### A

AT&T's argument that Kantz waived her right to bring a collective action is an affirmative defense.  Fed. R. Civ. P. 8(c).  Generally, affirmative defenses are inappropriate for resolution on a 12(b)(6) motion because the Court is limited to considering only the allegations in the complaint.  *In re Asbestos Prods. Liab. Litig. (No. IV)*, 822 F.3d 125, 133 n.6 (3d Cir. 2018).  However, the Court may address an affirmative defense at this stage if "the defense is apparent on the face of the complaint

---

2       In her Response brief, Kantz clarifies that she is not asserting that an OWBPA disclosure deficiency automatically invalidates a waiver of ADEA procedural rights.  (Resp. Br. 12, ECF 52.)

and documents relied on in the complaint." *Lujan v. Joseph Cory Holdings, LLC*, 905 F.3d 127, 130 (3d Cir. 2018) (quotation omitted). Kantz devotes a significant portion of her Amended Complaint to addressing the enforceability of the collective action waiver and relies on the language of the General Release throughout the pleading, allowing the Court to consider AT&T's argument at this stage.

Kantz alleges that AT&T knew its OWBPA disclosures were deficient, particularly because just weeks earlier, Judge Rice concluded as much with respect to materially identical disclosures AT&T provided to another former employee. (Am. Compl. ¶¶ 74–75, 81–82.) Because AT&T knew the OWBPA disclosures were invalid, AT&T also knew the ADEA claim waiver in the General Release was similarly unenforceable. Nevertheless, the company presented the claim waiver to terminated employees as an enforceable waiver of their substantive ADEA rights. Believing based on AT&T's misrepresentations that they had already released their underlying ADEA claims, terminated employees readily waived their procedural rights as well. (Am. Compl. ¶ 114.) In Kantz's view, AT&T obtained the collective action waiver by means of an unconscionable act and should be barred from asserting the waiver defense under the doctrine of unclean hands.

B

Unclean hands is an equitable doctrine that "applies when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001). In other words, the party invoking unclean hands "must show: (1) the party seeking equitable relief committed an unconscionable act; and (2) the act is

related to the claim upon which equitable relief is sought." *Scherer Design Gp. v. Ahead Eng'ing LLC*, 764 Fed. App'x 147, 150 (3d Cir. 2019) (unpublished). The doctrine may be invoked against a defendant asserting an affirmative defense of waiver. *Mente Chevrolet Oldsmobile, Inc. v. GMAC*, 451 Fed. App'x 214, 217–18 (3d Cir. 2011) (unpublished); *see also Romero v. Allstate Ins. Co.*, 52 F. Supp. 3d 715, 735 (E.D. Pa. 2014).

AT&T argues that Kantz's allegations sound in fraud, so they are subject to—but fall short of—Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. Rule 9(b) requires a plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quotation omitted) (cleaned up). "[T]he plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* Kantz alleges that the January 28, 2019 Surplus Notification letter she received from AT&T stated that it was providing employees a "General Release and Waiver." (Am. Compl. ¶ 85.) But "[t]his statement misrepresented that the release document that AT&T was providing the employee with was a 'general' release, when in fact, AT&T knew that the document was not an enforceable release under the ADEA." (*Id.* ¶ 86.) These allegations are sufficiently particular to put AT&T on notice of the particulars of Kantz's claim.

There must be a "close" nexus between the alleged misconduct and the equitable claim. *In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999). Kantz alleges that AT&T obtained by means of fraud the waiver it now asks the Court to enforce. This is

the type of relationship that the doctrine of unclean hands demands. *See Scherer Design Gp.*, 764 Fed. App'x at 152 (nexus insufficient where plaintiff "did not dirty its hands to acquire the rights it asserts in its complaint." (quotation omitted) (cleaned up)).

While the Court does not opine on the applicability or weight to be given Judge Rice's decision, for now Kantz claims that because of his ruling AT&T "knew" the claim waiver was unenforceable, but nevertheless used it to chill ADEA claims and extract further concessions related to vindicating those rights—namely, the collective action waiver. At this stage of the litigation, the Court cannot conclude that such behavior does not rise to the level of "shock[ing]" the Court's "moral sensibilities" so as to justify denial of equitable relief. *In re New Valley Corp.*, 181 F.3d at 524; *cf. Team Envt'l Servs., Inc. v. Addison*, 2 F.3d 124, 127 (5th Cir. 1993) (declining to reform overbroad noncompetition clause, reasoning that "[w]ere courts to reform and enforce agreements like those at bar, employers would be free routinely to present employees with grossly overbroad covenants not to compete. While the employer presumptively would know that the agreement would be enforced only to the limit of the law, the employee likely would not.").

Kantz has sufficiently alleged, for purposes of surviving a motion to dismiss, that the doctrine of unclean hands bars application of the collective action waiver. AT&T may address this and other arguments at later stages in the litigation.

An appropriate Order follows.

7

                                                   BY THE COURT:

                                                   ***/s/ Gerald J. Pappert***

                                                 GERALD J. PAPPERT, J.

7